UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
                                               :

UNITED STATES OF AMERICA           :

                                                 :

                     - v -               :                25 Cr. 249 (DLC)

                                                   :

JOSHUA GUTIERREZ,                :

                                                 :

                              Defendant.      :

------------------------------------------------- x

## SENTENCING MEMORANDUM ON BEHALF OF
## JOSHUA GUTIERREZ

TAMARA GIWA, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
JOSHUA GUTIERREZ
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (646) 588-8317

MARTIN S. COHEN
*Of Counsel*

TO:    JAY CLAYTON, ESQ.
        United States Attorney
        Southern District of New York
        One. St. Andrew's Plaza
        New York, New York 10007
        Attn:  VARUN GUMASTE, ESQ.
               Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

December 1, 2025

*By ECF*

Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

Dear Judge Cote:

Joshua Gutierrez's offense was a serious one, exacerbated by the fact that he began participating in the offense not long after his release from prison in March 2023. There are, however, strong countervailing considerations that warrant the imposition of a non-incarceratory sentence, including that: (1) Mr. Gutierrez stopped his criminal activity and began turning his life around *before* his arrest in April 2025; (2) he has continued on that positive directory since his arrest – among other things, working full-time at Chipotle, where he is "one of the best workers," *see* Exhibit B; and (3) he is now a first-time father – his daughter was born on November 26, 2025 – with a nascent family to support.

Here, a fair balancing of the § 3553(a) factors weighs heavily in favor of encouraging and supporting Mr. Gutierrez's positive progress rather than retarding that progress through the blunt tool of incarceration. Imposing a constructive sentence, one that allows Mr. Gutierrez to continue to work and support his family, will benefit society in the long term, and will best satisfy *all* the purposes of sentencing. Alternatively, I respectfully request that the Court adjourn sentencing for six months to allow Mr. Gutierrez to demonstrate that he will continue on this positive path.

## I.    The standard.

The overarching command of Section 3553(a) is that sentences should be "sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence and rehabilitation. To arrive at such a sentence, district courts are directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the individual; (2) the need for the sentence imposed to provide just punishment, deterrence, and needed educational and vocational training; (3) the kinds of sentences available; (4) the Guidelines-range and any pertinent policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution.  *See* 18 U.S.C. § 3553(a).

Honorable Denise L. Cote                                                                Page 2
December 1, 2025

Re:    *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

The Guidelines range is but one of these factors that a court must consider. *See generally United States v. Booker*, 543 U.S. 220 (2005).  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (emphasis in original). In every case, the sentencing court "must make an individual assessment based on the facts presented."  *Gall v. United States*, 128 S.Ct. 586, 597 (2007).[1]

## II.    A non-incarceratory sentence will best satisfy all the purposes of sentencing.

### A.    Mr. Gutierrez's background and characteristics.

Joshua Gutierrez was born in November, 1994, and grew up primarily in Manhattan. He recalls a happy childhood: he was close with both his parents and liked school. When he was around 10 years old, he was diagnosed with ADHD. *See* PSR ¶ 90; letter of Daphnee Jacques, attached as Exhibit F. He was prescribed medication, but ultimately his parents decided not to continue with the medication due to its side-effects. PSR ¶ 90.

At around the same time that Mr. Gutierrez was diagnosed with ADHD, his parents separated. Mr. Gutierrez ended up living with his father and paternal grandmother, and it was his grandmother who was his primary caretaker and emotional support. As Mr. Gutierrez writes in his letter, his grandmother was the person who "fed me every day, gave me money for school, and bought me clothes for school. . . . My parents were going through a divorce when I was younger so I was back and forth between their houses. I was mainly with my grandmother all the time." *See* Exhibit A.

Virtually all of the letter writers describe how the unexpected death of his grandmother – with Mr. Gutierrez finding her body – shattered Mr. Gutierrez, and sent him on a downward spiral from which he is only now recovering. His father writes that: "Ever since my mother died back in 2011, my son haven't been himself. He used to listen more to my mom than me since I was always at work and she stayed at home . . . . My mother was his go to for everything, he took her death very hard." *See* letter of Carlos Gutierrez, attached as Exhibit D. His uncle writes in the same vein: "His grandma passing away took a big toll on him and that's when a lot of these things started happening. He would do everything for his grandma and was always home and never out on the streets, but after she passed away Joshua wasn't the same Joshua. It put him in a dark place, and he wasn't in the right state of mind." *See* letter of Jose Rodriguez, attached as Exhibit G.

As Mr. Gutierrez explained to the Probation Officer, after his grandmother's death he eventually stopped attending school and began smoking marijuana: choosing "the streets"

---

[1] The advisory Guidelines range is 41 to 51 months' imprisonment.

Honorable Denise L. Cote                                                                   Page 3
December 1, 2025

Re:     *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

instead of school. *See* PSR ¶97. Mr. Gutierrez writes how his grandmother's death "messed up my whole life. . . . Once I lost her, I just started doing anything." *See* Ex. A. After dropping out of school, Mr. Gutierrez was arrested several times for possessing marijuana, and then, in 2017 and 2018, he was convicted of possession of counterfeit currency, resulting in his incarceration in New York State until March 2023.

Not long after Mr. Gutierrez was released from prison, he began participating in the charged conspiracy. (According to the Government, the first check deposited by Mr. Gutierrez in connection with this scheme occurred in July 2023; the last in April 2024.) I expect the Government to argue that a term of incarceration is required here in to deter Mr. Gutierrez, as he was on post-release supervision when he committed a new crime in 2017, and, despite a long prison sentence, it did not take long for Mr. Gutierrez to join in the charged offense.

But Mr. Gutierrez does not need to be incarcerated to deter him from future criminal conduct. Almost a year before his arrest in this case, Mr. Gutierrez separated himself from the people he had been following, and turned back to his family and his girlfriend for support. "I wanted a fresh start for myself," he writes. "I don't want this life for myself no more." *See* Ex. A. And when Mr. Gutierrez learned that he was going to be a father for the first time, the magnitude of his new responsibilities hit home. As Ms. Meléndez writes, "I have witnessed genuine growth in him . . . . His whole perspective changed once he realized we were going to be parents." *See* Ex. C, letter of Perla Meléndez.

In around February 2025, Mr. Gutierrez applied for a job at a Chipotle restaurant in Williamsburg. Boris Molina writes that "when Joshua first came to my store looking for a job I didn't think he would last long but I judged a book by its character. Joshua is one of my best workers right now." *See* Exhibit B. Joshua is "very respectful, he's always on time for work and he always makes sure our customers are satisfied." *Id.* Mr. Gutierrez was arrested on April 29, 2025, and has not missed a day of work.

While Mr. Gutierrez has continued to struggle with  marijuana use, he is actively participating in a treatment program: "I'm in a drug program now at Samaritan Village and I speak to a counselor every week on a one on one basis. She is very helpful with all my problems." *See* Exhibit A.

On November 26, 2025, Ms. Melendez and Mr. Gutierrez's daughter was born. *See* photograph, Exhibit L.

The Court can – and should – consider Mr. Gutierrez's new parental role in imposing sentence. The first year of a child's life, and the attachments she makes with those who care for her, have life-long consequences: "The relationships and experiences of children in the first years of life play a major role in how their brains and bodies develop. Infants and young children who experience supportive and positive relationships with parents and caregivers . . . build strong brain architecture and strong body system that support their lifelong health." *The Importance of the First Years of Life* (April 2019), in *Giving Kids a Healthy Start to Life: A Briefing Series for*

Honorable Denise L. Cote                                                    Page 4
December 1, 2025

Re:      *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

*New State Policymakers*, Robert Wood Johnson Foundation (Apr. 2019).[2] Separating a child from her parent, however, increases the likelihood of adverse outcomes in the future: "Parent-child separations lead to a host of long-term psychological, social, and health problems that are not necessarily resolved upon reunification." *See* Johayra Bouza, *et al., The Science is Clear: Separating Family has Long-term Damaging Psychological and Health Consequences for Children, Families, and Communities*, Society for Research in Child Dev. (June 20, 2018).[3] For young children, "the disruption associated with parental incarceration will likely adversely affect the quality of the childhood attachment to their parent. . . . Insecure attachments . . . in turn, have been linked to a variety of adverse outcomes, including poorer peer relationships and diminished cognitive abilities." *See* Ross Parke, *et al.*, *Effect of Parental Incarceration on Young Children*, U.S. Dept. Health and Human Servs, Office of the Assistant Secretary for Planning and Evaluation, at 4 (November 2021).[4]

Mr. Gutierrez did not have children when he committed this offense. He is now in a wholly different place, working full-time, with a partner and brand-new baby dependent upon him. Ms. Meléndez explains that she has limited support here in New York. "I don't really have a support system," she writes. "I'm still working but of course when I give birth I can't work so Joshua is most of my financial support. We work together and help each other." *See* Exhibit C.

In their letters to the Court, Mr. Gutierrez's friends and family describe the changes they've seen over the past year:

- *Perla Meléndez* (girlfriend): Both Joshua and I fully understand that what he did was wrong and very serious. We know that his actions have consequences, and he has accepted responsibility for them. Since then, I have seen how deeply remorseful he is and how committed he has been to making things right. He has been working steadily, attending his program, and showing real dedication to improving himself and changing his life. *See* Ex. C.

- *Carlos Gutierrez* (father): My son is a good person judge he made mistakes down the road, but he has nothing but a beautiful heart. He helps me out a lot. I'm getting old and he helps me cook, he do my laundry at times, he's been very useful. He's helping out with the bills now since he been working. I'm just amazed at how he has done a 100% turn around since this case, Joshua has improved a lot. *See* Ex. D.

- *Ashley Gutierrez* (sister): Joshua has made real changes in his life. He's been working, staying out of trouble, and truly

---

[2] Available at https://www.rwjf.org/en/insights/our-research/2019/04/the-importance-of-the-first-years-of-life.html
[3] Available at: https://www.srcd.org/briefs-fact-sheets/the-science-is-clear
[4] Available at: https://aspe.hhs.gov/reports/effects-parental-incarceration-young-children-0

Honorable Denise L. Cote                                                    Page 5
December 1, 2025

Re:      *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

> trying to build a better future for himself. What means the
> most to me is how much love and care he has for his family.
> He absolutely adores my two children, his niece and nephew.
> He's playful, patient, and they look up to him. It's clear he
> wants to be a positive role model for them, and I can see that
> motivation is pushing him to keep doing better. . . . I can
> honestly say I've seen maturity, humility, and accountability
> in him that wasn't always there before. *See* Ex. E.

- ▪ *Daphne Jacques* (mother): [Joshua] is a kind person with a
  good heart and is always looking out for others, especially
  for his family, and he is a compassionate person. He is
  always calling to check on me, and I see how caring he is for
  his siblings and with my mother. *See* Ex. F.

- ▪ *See also* letters of Jose Rodriguez, Kimberly Rivera, Pamela
  Guavera, Sonia Thomas, and Janelly, attached as Exhibits G
  to K, respectively.

In sum, Mr. Gutierrez's background and characteristics strongly support the requested
sentence.

### B.      A non-incarceratory sentence will best satisfy all the purposes of sentencing.

Here, a non-incarceratory sentence is best tailored to Mr. Gutierrez's unique
circumstances:

*Punishment*: While a term of supervised release is designed primarily for rehabilitative
purposes, it nevertheless has a punitive component, with conditions that often significantly
curtail a person's liberty. *Cf. United States v. Leitch, et al.*, 2013 WL 753445, at *12 (E.D.N.Y.
Feb. 28, 2013) (emphasis in original) (citing *Gall v. United States*, 552 U.S. 38, 48-49 (2007)
("When a judge chooses between a prison term and probation, she is not choosing between
punishment and no punishment. Probation is less severe than a prison term, but both are
punishment. And as the Supreme Court has recognized, probation is *significant* punishment.") A
court can also impose special conditions – such as home detention or community service – which
will can punish while allowing a person to remain in the community. *See id* at *12 (describing
the array of alternative sanctions that "allow judges to impose enhanced (and sometimes even
constructive punishment) without sending the defendant to prison.").

The Court can also consider the fact that Mr. Gutierrez has been on home detention since
his release after his arrest in April 2025. While this condition was not imposed for punitive
reasons, it nevertheless is a very significant deprivation of liberty.

Honorable Denise L. Cote                                                      Page 6
December 1, 2025

Re:      *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

*Deterrence*: For the reasons described above, a term of incarceration is not required to specifically deter Mr. Gutierrez. Indeed, for the past 18 months, Mr. Gutierrez has been doing everything in his power to change the trajectory of his life: he is now working full time, actively engaging in drug treatment, and is committed to being a wholly positive contributor to his nascent family and larger community.

Incarceration is also not required for the purpose of general deterrence, "a phenomenon that is notoriously difficult (and perhaps impossible) to measure," see *United States v. Brady*, 2004 WL 86414, at *9 (E.D.N.Y. Jan 20, 2004). Evidence-based studies strongly support the conclusion that it is the *certainty* of being prosecuted rather than the severity of punishment that deters crime. *See* Nat'l Inst. of Just., *Five Things About Deterrence*, available at http://nij.gov/five-things/pages/deterrence.aspx.[5]

*Incapacitation*: Mr. Gutierrez does not need to be incapacitated for any reason. Indeed, society will be far better served by allowing him to remain in the community and support his family and newborn baby.

*Rehabilitation*: Mr. Gutierrez is currently receiving supportive therapeutic treatment for his marijuana use, and he has developed a strong therapeutic relationship with his counselor. *See* Ex. A. Mr. Gutierrez has not had such a relationship before. Our requested sentence will allow Mr. Gutierrez to build on this relationship, and to positively explore the mental health issues that underlie his marijuana use. *See* 18 U.S.C. § 3553(a)(2)(D) (court must consider the need for the sentence imposed to provide vocational training, medical care, or other correctional treatment in the most effective manner).

Mr. Gutierrez is working full time, and he will continue to do so while on supervision. While he has been successful at Chipotle, he is looking to build a career that can provide more long-term stability. Even a brief term of incarceration will result in Mr. Gutierrez losing his current job, and will make it much harder for him to start from scratch when he is released. *See id.*

*Restitution*: Allowing Mr. Gutierrez to remain in the community will also allow him to begin paying restitution, payments that will continue uninterrupted into the future. And because a non-incarceratory sentence will assist Mr. Gutierrez in developing a stable career, it will likely lead to larger restitution payments in the future. *See* 18 U.S.C. § 3553(a)(7).

*Sentence Disparities*: The fact that Mr. Gutierrez's co-defendants will all have served some term of imprisonment does not mean that the Court must therefore impose a term of

---

[5] The National Institute of Justice describes the "Five Things" series as a distillation of "what we know from years of rigorous scientific inquiry," summarizing an "abundance of research, analysis, testing and evaluation." *See* Nat'l Inst. Just., *NIJ "Five Things" Series*, available at: http://nij.gov/five-things/Pages/welcome.aspx.

Honorable Denise L. Cote                                                    Page 7
December 1, 2025

Re:     *United States v. Joshua Gutierrez*, 25 Cr. 249 (DLC)

imprisonment on Mr. Gutierrez. As an initial matter, the primary purpose of § 3553(a)(6) – the
need to avoid unwarranted sentence disparities – is to minimize nationwide disparities, as
opposed to local or case-specific comparisons. *See*, *e.g.*, *United States v. Colucci*, 743 F. Supp.
3d 452, 462 (E.D.N.Y. 2024) (citing *United States v. Stewart*, No. 23-6330-Cr., 2024 WL
3517853, at *2 (2d. Cir. July 24, 2024)). More fundamentally, our requested sentence is
grounded in Mr. Gutierrez's unique characteristics, in particular the efforts he has made over the
past 18 months, including the past eight months on pretrial supervision.

        For these reasons, I respectfully request that the Court impose a non-incarceratory
sentence, with a three-year term of supervised release, and special conditions including mental
health and substance use treatment. Alternatively, I respectfully request that the Court adjourn
sentencing to allow Mr. Gutierrez to further demonstrate his commitment to being a wholly
positive contributor to his family and community.

                                        Respectfully submitted,


                                        /s/_____

                                        Martin S. Cohen
                                        Ass't Federal Defender
                                        Tel.: (646) 588-8317

Cc.     Varun Gumaste, Esq., by ECF

Exhibit A

Dear Judge Cote,

My name is Joshua C. Gutierrez. I'm writing to you because on December 11th 2025 I will get sentenced. I want to start by saying I apologize to the people I took from and the hard times they had to go through while I was defrauding them out of their money. I'm really sorry.

I'm not the person I once was. I know I did messed up things before, but I've changed a lot. I'm working very hard at Chipotle which is my first job ever. My coworkers love me, I help my family, and most importantly, I help my baby mother the best I can while I'm on house arrest. Thank you for giving me a second chance by letting me stay out on bail to see my child be born on November 23rd, I appreciate that a lot.

Since I have been on bail, I signed back up for school to learn more about construction at Lincoln Tech and I'm still waiting to get enrolled. I don't have the money to pay for it right now, and the class is full, but they told me to come back in January. If I have the chance to, I would definitely go in January. I do not want to sit around in prison. I'm moving on up in work at my job at Chipotle, too. I work between 30 to 40 hours a week. They were giving me less hours after I got arrested, so I started picking up other people's extra shifts and didn't take any days off of work. My manager saw that and started to give me more days out of the week for my schedule. He said I'm one of his best workers right now and would think about promoting me to Assistant Manager if I am around for it. I feel like now since I got into the work life, I know how to better communicate myself, and to continue to do well. A lot of people like me at my job, so I don't ever want to look back. Working did me justice and it's changed my life around for the better. Even though I might deal with customers who are having a bad day, it makes MY day because at least I'm doing something positive. I know I'm not an angel, but I have turned my life around.

I just want to be a good father to my daughter who will be born on November 23rd. I know I messed up and the crime I committed is not to be played with and it is serious. It stresses me out that I even put myself in this predicament because I'm not this type of person. I'm really a loving, caring person. My daughter will be born on November 23rd and I just feel so bad that my girlfriend, Perla, has to work a job since she doesn't know if I'm going to jail or not.

When my Grandma passed away, that messed up my whole life. That's when all the criminal traits started. I was only 16 years old when she died. One day I came home from school and my grandmother gave me some food and then later that day I was calling for her and went to her room and saw her on the floor. I felt awful because I felt like if I had never taken a nap then maybe I could have saved her. That's who fed me every day, gave me

money for school, and bought me clothes for school. My parents did too, but I was grandma's boy. My parents were going through a divorce when I was younger so I was back and forth between their houses. I was mainly with my grandmother all the time at my dad's house. Once I lost her, I just started doing anything. I was hurting and I never got over it until a little while before this case. I went to her grave, and I talked to her and then had a dream where she said everything was going to be okay.

That's why before the federal agent even came to arrest me, I had already gotten out of the situation I was in and I found a job on my own. I wanted a fresh start for myself. I don't want this life for myself no more and I realized that before I even got arrested for this case. I want to better myself in every way. I'm in a drug program now at Samaritan Village and I speak to a counselor every week on a one on one basis. She is very helpful with all my problems. I explain to her how I know what I did was wrong and I just wish I can get a start over to prove to everybody that this is not me, I'm better then what I portray myself to be.

Please Judge Cote, give me a second chance. Please let me stay on house arrest and work and go to school please let me have a second chance. I know what I did was very wrong it bothers me every night. If I can rewind in time I would of got a job from the jump and worked hard for my money. Please be lenient on my sentence and let me show the world I'm actually a good person. My job, my family, my lawyer, and my pretrial officer knows I'm trying. I'm under a lot of stress and I still push through because I don't want to go to jail again. I don't want this life for me, I want better.

Thank you for giving me a chance to write you a letter. Hopefully you take me into consideration and let me keep working and show the government I'm not that person no more, I'm a changed humble man.


Thank you once again,

Joshua Gutierrez

Exhibit B

Dear Your Honor,


Good morning. My Name Is Boris Molina I'm one of the Store Managers at Chipotle Mexican grill located at 130 N 4th street Brooklyn NY 11249. I'm writing on behalf of one of my employees, Joshua Gutierrez. I have a lot of beautiful things to say about Joshua. He is very respectful, he's always on time for work and he always makes sure our customers are satisfied. I know the crime he committed wasn't right, but everybody deserves a second chance. When Joshua first came to my store looking for a job I didn't think he would last long but I judged a book by its character. Joshua is one of my best workers right now.

Please give Joshua a second chance. He is doing so good at the job. It would really hurt me to see him go. He loves his job and he thanks me every time he sees me for giving him a chance so I ask your honor please give Joshua a second chance let him stay at the job and keep working. Thank you.



Boris Molina

11/11/2025

Exhibit C

Dear Your Honor,

My name is Perla Meléndez, and I am writing to you regarding my boyfriend Joshua Gutierrez, who is currently before you for sentencing. Joshua and I have been together since high school, and over the years I have come to know him as a kind, caring, and deeply loving person. He has always had a good heart.  One time there was someone on the street who needed food and Joshua gave his food to him. Another time, his friend asked if he could borrow Joshua's shirt for his birthday and Joshua gave it to him. I constantly see him helping his friends. If his friends ask him for $10, even if Joshua only has $20, he would still give it to them. He's always saying yes, which I feel like is a part of his default because he has struggled to say no in the past. But this situation has opened his eyes, and he is living in reality more. Before, he wasn't. I have seen how he is maturing and is becoming more of a family man.

Joshua is so much more considerate now and he's been putting in long hours at work, too. His job at Chipotle is his first job ever, but he had this job before he got arrested for this case. I had already seen how he was already on the road to maturing and being better. He seems motivated and excited about his job. He likes to work so he has realized the more hours you put in the more money you make, and he's excited for his check. He will pick up other people's shifts too. He always makes sure he picks up shifts if he's not already working 40 hours to make it become 40.

We are also expecting our first child together, due on November 23rd. This has given Joshua even more motivation to stay on the right path and become the best father and partner he can be. I have witnessed genuine growth in him, and I truly believe in his potential to continue moving forward in a positive direction. His whole perspective changed once he realized we were going to be parents. I told him I didn't want to be pregnant by myself, and I think it opened his eyes to the fact that he can't be playing these games anymore. Before, he had a certain mindset because of the crew he was hanging out with. But I sat down with him and said we have to get our lives together, and he has. By the time he is sentenced, I will have given birth and I'm glad he will be able to be here for it. My mom lives in Florida and I don't have that much support here. It would be devastating if Joshua were gone. I don't even know what I would do. I'm trying to stay positive that he can get probation or that jail won't be that long because I don't really have a support system. I'm still working but of course when I give birth I can't work so Joshua is most of my financial support. We work together and help each other. Now that I'm about to give birth, he would be the main income.

He's talked a lot about the trauma of his grandma and about her not being around and that leading him to hang out with the wrong crowd. When she died, he was grieving and didn't know how to handle it, so he was out in the streets. That was the turning point that caused him to spiral. It's hard for him to cope and it's been hard for him to let the trauma go. But he has been putting in effort already with this case like by going to his drug program. Whatever the court is telling him to do, he has been following it so that he can stay out of trouble and be compliant. The old him would have questioned it, but he's not questioning anything.

Both Joshua and I fully understand that what he did was wrong and very serious. We know that his actions have consequences, and he has accepted responsibility for them. Since then, I have seen how deeply remorseful he is and how committed he has been to making things right. He has been working steadily, attending his program, and showing real dedication to improving himself and changing his life.

I respectfully ask for your compassion and leniency in his sentencing. Joshua is not a bad person — he is someone who made mistakes, recognizes the seriousness of them, and is working every day to do better. With continued support and guidance, I am confident he can build a better future for himself, for me, and for our baby.


Thank you for taking the time to read my letter and for considering my words.


Sincerely,

**Perla Meléndez**

Exhibit D

11-11-2025

Your Honor,

My name is Carlos Gutierrez and I'm writing to you on behalf of my son Joshua Carlos Gutierrez who is getting sentenced in front of you December 11ᵗʰ 2025. First I want to start off saying sorry for the crime my son has committed. It wasn't right at all. I raised my son better than that. I give him whatever he wants it should be no reason he did such a crime but he's learning and stressing from it.

Joshua was always a good kid, it's just the people he hung around. He used to struggle in school with talking a lot, so we had to take him to a specialist, but he didn't have disciplinary issues. It's just been the people he hung out with.

My son doesn't want nothing to do with the streets no more. Ever since my mother died back in 2011, my son haven't been himself. He used to listen more to my mom than me since I was always at work and she stayed at home. He listened to me and respected me, too, but she would look out for him more. She was always at home looking out the window checking on him. My mother was his go to for everything, he took her death very hard. He was the one who found her and I remember he called me crying and saying she had died. It hurt him more than anybody, but he finally found peace.

My son has an unborn baby expected in two weeks which is my granddaughter. My son is a good person judge he made mistakes down the road, but he has nothing but a beautiful heart. He helps me out a lot. I'm getting old and he helps me cook, he do my laundry at times, he's been very useful. He's helping out with the bills now since he been working. I'm just amazed at how he has done a 100% turn around since this case, Joshua has really improved a lot.

My son knows the crime he committed wasn't ok. I could see the hurt in his face, he was just being a follower. He accomplished so much these last couple of months. He's working very hard and he loves his job. He's very happy to go to work, he always comes home from work at night and talks to me about how his day is and I'm so happy to hear this coming from my son.

Judge I know he's not perfect but he's not the worst either. Please judge be lenient with my son's sentence. Please let him be a father to his daughter and continue to work I promise I will make sure he stays on the right path. Please give my son probation or keep him on house arrest. Like I said, from the beginning I know how serious the charges are and I apologize he committed this crime. He apologized about committing this crime. Please give my son a second chance to show that he changed his life around. Even though he's

fighting this case he tries to stay as positive as he can. Please give my son a second chance at life, he won't let us down. Thank you for the time of your day.


Love,

Carlos Gutierrez

Exhibit E

Dear Your Honor,

I am writing this letter on behalf of my little brother, Joshua Gutierrez. I love him very much, and I just want to share from my heart how much I've seen him grow and change for the better.

Joshua has made real changes in his life. He's been working, staying out of trouble, and truly trying to build a better future for himself. What means the most to me is how much love and care he shows for his family. He absolutely adores my two children, his niece and nephew. You can see how much they light up when he's around. He's playful, patient, and they look up to him. It's clear he wants to be a positive role model for them, and I can see that motivation is pushing him to keep doing better.

Joshua and I have also grown a lot closer. We weren't close when we were younger since there is a four year age gap between us and he went to jail at a young age. But as we got older and since he's been out of jail, he's made a strong effort to rebuild our relationship, and I can honestly say I've seen maturity, humility, and accountability in him that wasn't always there before. He's really been trying to do the right thing and to be someone our family can depend on. My brother has been thinking about his future more and he has had his job at Chipotle for a long time. Him holding this job down was a big sign to me that he's trying to become a better adult. I try not to get into the case too much with him because its disappointing but when I found out, Joshua told me he had stopped before he even got arrested. It's an unfortunate situation, but it was nice to hear him say that he stopped on his own and not just because he was caught.

I think Joshua is in a much better headspace now, especially since he has his supportive girlfriend and a baby on the way. I like his girlfriend, Perla. She always has my brother's best interest, and she just wants him to be better. She is a positive influence on him and is always there for him, encouraging him to get a job and to not be doing things he shouldn't be doing.

I know when Joshua's grandmother passed away, it was really hard for him. He was the one who found her body. She was the matriarch of the

family and really looked out for him. It's really sad and I don't think he dealt with it in the healthiest way. But now, I have definitely seen a change in him. He's a completely different person now. I think just the thought of going back to jail is enough for him to not want to do this again. With their baby on the way, I don't think Joshua would want his child to go through the things he has gone through.

I truly believe that sending him back to jail would take away the progress he's made and the hope he's finally found in himself. He's finally on the right path. He has been working hard, staying focused, and keeping close to his loved ones. He's not perfect, but I see his effort and his heart every day, and I believe he deserves the chance to continue proving that he's changed.

Thank you so much for your time and for considering my words. Joshua means a lot to me, and I truly believe he has more good to give if he's given the opportunity to keep moving forward.

With respect and sincerity,
Ashley Gutierrez

Exhibit F

Daphnee Jacques

████████████████

████████████

Email: ████████████████████

Phone: ████████████

November 10th, 2025

To whom it may concern,

I am writing this letter to provide a character reference for my son, Joshua C, Gutierrez. I am his mother and have known him his entire life. I am writing to you today with the understanding of the seriousness of the current proceedings and to ask for your kind consideration of his character and future.  Joshua is not defined by the incident for which he is being sentenced. While I am disappointed and concerned about the situation, I want to provide you with a more complete picture of the person I know him to be. He is a kind person with a good heart and is always looking out for others, especially for his family, and he is compassionate person. He is always calling to check on me, and I see how caring he is for his siblings and with my mother. Joshua was very close with his dad's mom because she was the main one who raised him. Even though he was not living with me at the time, I could still tell it hit him hard when she died.

Joshua has a strong sense of loyalty to his friends and family and he shows kindness to strangers. But I think he also was involved with the wrong crowd. In the beginning, he was more in the street and with the wrong people. He also faced significant challenges when he was young. He was diagnosed with ADHD when he was young and had challenges in school and was extremely hard on him to keep focus. Now, Joshua is a totally different person. He used to call me all the time asking for money or support, but now he goes to work on his own and rarely asks me for anything. It's been this way ever since he got out of jail.

I am not making excuses for his behavior. I am confident that with your mercy, Joshua can learn from this experience and make a positive contribution to society. I will continue to support him and help him through any sentence, and I ask that you take all of this into account when making your decision.  Thank you for your time and consideration.

Sincerely,

Daphnee Jacques

(Mother)

Exhibit G

Jose Rodriguez

11/21/2025

Dear Judge Cote,

My name is Jose Rodriguez, and I am Joshua Gutierrez's uncle. I have known him his whole life.

I always knew he had potential, a good heart, and charisma but unfortunately, things happened when he grew up. People make mistakes and run into certain friends and temptations happen, which is unfortunately what happened to Joshua. He was always respectful and helpful around the house, running errands and things like that. Even as he got older, I saw he was maturing and trying to get better in life but then this case happened. I think he saw an opportunity at the time for fast money in the streets when he was down and out and vulnerable after his grandma died. His grandma passing away took a big toll on him and that's when a lot of these things started happening. He would do everything for his grandma and was always home and never outside on the streets, but after she passed away Joshua wasn't the same Joshua. It put him in a dark place, and he wasn't in the right state of mind. I feel like he didn't care about himself or life anymore.

When he came out of jail, he was trying to do the right thing. He was working before he even got arrested and he still is working now at Chipotle. It's just so unfortunate that he has to go through this once again. But now, he's been working which shows me he's really trying to turn things around. This is his first real job and he goes all the way to Queens to work when he lives in Manhattan so I can really tell he's trying to be better. You can tell he changed because if he was trying to do the wrong thing, he wouldn't be working at Chipotle. I also feel like he's accepted his grandma's death now. He tells me how much he misses her but I tell him she's always watching over him so he will be alright. He knows that and is now trying to do what he has to do to make sure everything falls in line.

His girlfriend Perla is a good fit for him and motivates him to do the right thing. I can see how much he loves her. I really think she's the reason he got his job. She does a lot for him, and he does a lot for her. I'm really glad he met her because she helps him do the right thing in life.

I know his parents would both do anything for him and were there for him throughout his entire bid. His dad would constantly go visit him, and he stays with his dad right now, that's like his best friend. I live a few blocks away from him and whenever he calls me and wants me to check in on him, I'll go see him and try to keep him positive. I know court is coming

up and it's a lot for him. He just lost 6 years out of his life, and it can mentally break a person. My older brother went through that too, so I understand where they're coming from. But I know he's really trying this time so I just hope you can see how he's trying to change his life.

I can tell Joshua's been stuck in his head. He can only leave his house when he goes to work and I understand that. I know he made a bad mistake, but I tell him everything is temporary. I know for a fact this won't happen again. Just by him working in Queens getting minimum wage, I know for a fact that he's willing to try. He don't care about that life anymore, he's left it behind so I already know he's not a danger to society anymore because he's trying in ways he wasn't before. I just want everything to be good for him.

I talked to him yesterday and he's always trying to be positive, he's just stressed out. He doesn't want to go back to jail. I tell him at the end of the day it's a lesson learned. I used to be in the streets involved doing stuff I shouldn't be doing and I changed my whole life around now. I'm the friend that tells you what you need to hear, not what you want to hear. I told Joshua that I'm about to be 37 and as we get older, we have to change our lives and progress in life, not move backwards. And he's really been understanding that when I tell him. Perla really likes when I'm around because she sees I'm a good influence on him. I don't want to be around people who are into the wrong things, and I tell Joshua that, too.

He is a great person who is not a menace to society at all. He is family oriented and a great help to everyone around him. Please give him a second chance to make great decisions and build a positive life.

Thank you,

Jose Rodriguez

Exhibit H

September 15, 2025

Dear Judge Cote,

I am Kimberly Rivera, writing on behalf of Joshua Gutierrez whom I have known for about 16 years. We've grown up as childhood friends. Joshua is one of my best friends I would consider as my brother, family. Joshua is a man of few words, as you are likely to discover for yourself during his court hearing. However, there is no better friend I can count on than him; not necessarily by words which can be meaningless when the rubber meets the road, but by deed. Growing up with Joshua he was funny, empathetic, mature, self-directed, and resilient. I had a lot of father problems growing up so if there was anything I needed, Joshua would help. Joshua was always someone I could count on and he gave me the best advice. We used to play outside, crack jokes on each other, and stay up all night with all our friends. Joshua would come over the house, with no hesitation he would help my mom bring up the groceries.

Joshua has been there for me countless times, especially during my pregnancy. Joshua would help me study to make sure I stood ahead on my grades as a teen mom. Even as a teen mom, he always heard me out and never judged me. He told me the truth even if he bothered me and that's what real friends do! Joshua has a good heart, he's a great person & he's an even better friend! This is just one of the many ways that Joshua carries himself every day that earns the respect of our friends and our families.

After I had my child, Joshua and I didn't talk as much, but we have always kept in touch. Even when he was in jail, I would write to him. We didn't grow up in the best neighborhood and whenever he talks to me about his cases, he just says it's the people he grew up around. I recently moved to Connecticut but I know Joshua has a new job at Chipotle now and I think it's his first job. Growing up, he never really worked jobs but he seems excited for this one. When I spoke to him a couple days ago, he said he's trying to make better decisions in life and isn't trying to go back to the way things were before. Even with the way he is showing up so consistently with his girlfriend shows that he is changing for sure. Now, he's very respectful and I can tell he thinks before he speaks more. I will always encourage him and guide him towards the best route so that he doesn't spiral back into old habits. He has my support and my family's support for anything.

If there is anybody who deserves a second chance with regard to legal issues it would be Joshua Gutierrez and if you take a moment and get to know him during his court proceeding, I think you might agree.

In closing, thank you for your attention to this letter.

Respectfully Submitted,
Kimberly Rivera

Exhibit I

Dear Judge,

My name is Pamela Guevara, and I am a medical assistant at St. Barnabas Hospital. I am writing on behalf of my friend, Joshua Gutierrez, whom I have had the privilege of knowing for over a decade. Over the years, I have come to know Joshua as a loyal, caring, and family-oriented man who values the people in his life and always tries to be there for them.

Joshua's friends and family mean everything to him. I have seen how much effort he puts into supporting those close to him, whether it's lending a hand when times are hard or simply being a source of encouragement and guidance. He has always been someone people can count on, and he takes that role seriously

I also know that Joshua wants to set a good example for those around him. He has spoken about learning from his mistakes and showing that it is possible to grow and make better choices. His determination to improve himself and be a positive influence on the people who look up to him shows me that he is on the right path.

I believe Joshua deserves a second chance. Allowing him this opportunity would not only help him continue moving forward, but also give his friends and family the steady, supportive presence they rely on. With their encouragement, and with his own strong will, I am confident he will make the most of this chance.

Thank you for your time and consideration. I wholeheartedly support Joshua Gutierrez and believe he has the heart and determination to succeed.

Respectfully,

*Pamela Guevara, MA*
Occupational Health Services (OHS)
Wellness Center, 1st Floor
4507 Third Avenue
Bronx, New York 10457



ST. BARNABAS HOSPITAL
183rd St. & 3rd Avenue
Bronx, New York 10457

Exhibit J

Sonia Thomas

████████████████

New York, NY 10025

████████

████████████

To Whom It May Concern,

      I am writing this letter on behalf of friend and longtime neighbor, Joshua Gutierrez. I have known Joshua since he was in Junior High School. We were family friends growing up in the same neighborhood and next-door neighbors, someone I consider as a little brother.

      From a young age, Joshua has always been a person who shows kindness, loyalty, and respect to others. I have countless memories of him lending a helping hand, whether it was going to the store for my grandparents and checking up on them when I wasn't around to shoveling snow in the wintertime, helping people out, or simply being someone people can rely on. Even now I no longer stay with my grandma and he constantly making sure she does not need anything from the store. He's not perfect but he is caring, respectful, and I'm sure willing to change his past behaviors.

      I understand that Joshua is facing a very serious matter. While I do not excuse any mistakes he may have made, I want to express that they do not reflect the person I know him to be. He's been working on himself, trying to have a better future. I'm confident that he has the strength and determination, faith, and family and friend support to become a better person moving forward.

      I hope you take into account the person I and many others know him to be -- a good person, supportive neighbor, friend, and family. Someone who is capable of growth and positive contributions to society.

Respectfully,

Sonia Thomas

Exhibit K

Dear Judge

My name is Janelly, and I am writing on behalf of my friend, Joshua Gutierrez. I have known him for 2 years and wanted to respectfully ask the Court to consider granting him a second chance.

I am fully aware of the seriousness of the offense involving fraud, and I do not take it lightly. What happened was wrong, and Joshua Gutierrez understands that deeply. Since the incident, I have witnessed firsthand the remorse and regret he carries. Joshua has spoken openly about the mistake, accepted responsibility, and have been taking meaningful steps toward rebuilding integrity and trust.

In the time since this case began, Joshua has worked hard to change his past errors he has maintained steady employment, focused on supporting family responsibilities. Does not socialize with criminals or anyone whom could endanger his freedom and his presence for his now growing family. These efforts show that he is determined to make amends and lead an honest, productive life moving forward.

Your Honor, I know that fraud is a serious crime, but I also believe that people can learn from their mistakes when given the chance. I have seen the genuine remorse and transformation in Joshua Gutierrez. He is not the same person who made that poor decision he is now focused on rebuilding his reputation and freedom through honest work and personal accountability.

I respectfully ask that you consider Joshua Gutierrez character, growth, and sincere efforts toward change. I truly believe that, if given leniency or an opportunity for rehabilitation, he will continue on this path and prove that this mistake does not define who he truly is.

Thank you for taking the time to read my letter and for considering my perspective as someone who knows Joshua Gutierrez personally. I hope you will see, as I do, that he is worthy of a second chance.


With respect and sincerity

Janelly

Exhibit L

